# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELIZABETH SHAMONSKY,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 07-1606** |
| | : | |
| **SAINT LUKE'S SCHOOL OF** | : | |
| **NURSING, et al.,** | : | |
| **Defendants** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                              **March  17, 2008**

Elizabeth Shamonsky brought this suit against Saint Luke's School of Nursing and "Jane/John Does" (unnamed members of the faculty) alleging disability discrimination and failure to provide a reasonable accommodation in violation of the Americans with Disabilities Act, the Rehabilitation Act, the Pennsylvania Human Relations Act, and the Pennsylvania Fair Educational Opportunities Act, along with a state law claim of promissory estoppel.  Shamonsky seeks acceptance by Saint Luke's of her credits subsequently earned from Lehigh County Community College, which would enable her to graduate from Saint Luke's program.  She also seeks damages and costs for her claims, and injunctive relief for other persons with similar learning disorders.  The defendants have filed a motion to dismiss and/or for summary judgment.  For the following reasons, I will grant the motion to dismiss in its entirety.

## I.    BACKGROUND[1]

Shamonsky alleges that she was the victim of unlawful discrimination based on her learning disability when her enrollment as a student in Saint Luke's nursing program was terminated for failing two nursing courses.[2]  Her disability allegedly limits her ability to perform several major life functions, such as reading, thinking, and learning.  Shamonsky also alleges that the school was aware of this disability due to her poor performance on its entrance exam, especially in reading comprehension.  During the time Shamonsky was in the program, Saint Luke's changed its grading system, which the plaintiff contends discriminates against individuals with disabilities.[3]  In July 2004, with only one and a half semesters remaining, Shamonsky was dismissed from the nursing program because of poor academic performance.  After her dismissal, Shamonsky sought and underwent a neuropsychological evaluation to assess a possible learning disorder.  After several days of evaluation in August 2004, the clinical psychologist found that Shamonsky has a learning disorder with neuropsychological deficits in reading and written expression.  See

---

[1]  The facts are gleaned from the complaint and the extrinsic documents upon which the complaint is based.  See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004).  They are presented in the light most favorable to the plaintiff, as the non-moving party.

[2]  It is the written policy of the school that "students who are academically unsuccessful ("fail") or withdraw failing from any nursing course more than one time will be ineligible for readmission."  See Def.'s Ex. F at 16 (emphasis in original).  Shamonsky was aware of that policy but nevertheless sought readmission based on her post-dismissal submission of a psychologist's report which concluded that she has a learning disorder.

[3]  Saint Luke's changed the passing grade from 75 ("C") to 78 ("C +").  This change would not have affected Shamonsky's academic standing in that she received a grade of 73.75 ("C – ") in the course that she failed after the change became effective.  See Def.'s Ex. F at 15.

Def.'s Ex. B.  The psychologist further noted that "Shamonsky's cognitive difficulties would continue to present impediments in terms of her ability to graduate from the nursing program." Id.  He nevertheless recommended, *inter alia*, individual instructions from a reading specialist, textbooks on audiotape, and education on test taking strategies. Id.

On December 6, 2004, the Student Admissions, Progression and Development Team ("SAPD") met and discussed Shamonsky's request for readmission to the nursing program.  See Def.'s Ex. J.  The chairperson of SAPD explained that before Shamonsky actually failed both courses she had been advised to withdraw from them due to the then current circumstances in her life, but decided to continue in both courses.  The SAPD was concerned that readmission would only set Shamonsky up for continued failure, and voted to recommend to members of the Faculty Organization that they deny the request for readmission.  Id.  At a meeting on January 31, 2005, the Faculty Organization voted unanimously to uphold the school's policy to not offer readmission to a student who failed two nursing courses.  It also noted that Shamonsky had been advised to take some time off before she failed the second course, but she chose to continue.  Id.

## II.   LEGAL STANDARD

Subject matter jurisdiction over the alleged violations of the federal statutes is proper pursuant to 28 U.S.C. § 1331.  Because Shamonsky's state law claims form part of the same case or controversy, subject matter jurisdiction over the Pennsylvania Human

3

Relations Act claim, the Pennsylvania Fair Education Opportunities Act claim, and her claim for promissory estoppel is proper pursuant to 28 U.S.C. § 1367(a).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a pleading for "failure to state a claim upon which relief can be granted."  The rule is designed to screen out cases where "a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted."  Port Auth. v. Arcadian Corp., 189 F.3d 305, 311-312 (3d Cir. 1999).  Under Rule 12(b)(6), a pleading should not be dismissed for failure to state a claim unless it appears beyond doubt that the non-moving party can prove no set of facts in support of its claim which would entitle it to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The issue, therefore, is not whether the non-moving party will ultimately prevail, but whether it is entitled to offer evidence to support its claims.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

In considering whether a pleading should be dismissed for failure to state a claim upon which relief can be granted, a court must consider only those facts alleged in the pleading and accept all of the allegations as true, drawing all reasonable inferences in favor of the non-moving party.  ALA v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); see also Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004) (in deciding motions pursuant to Rule 12(b)(6), courts generally consider only allegations in the pleading,

4

exhibits attached to the pleading, matters of public record, and documents that form the basis of a claim).

## III.   DISCUSSION

Shamonsky alleges disability discrimination and failure to provide reasonable accommodation in violation of the ADA (Titles II and/or III),[4] the Rehabilitation Act, the Pennsylvania Human Relations Act,[5] and the Pennsylvania Fair Education Opportunities Act.[6]

Title III of the ADA provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any

---

[4] The complaint alleges violations of the ADA under "Title II and/or Title III." Title II prohibits discrimination by public entities. See 42 U.S.C. § 12132. A public entity is defined as (A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority. See 42 U.S.C. § 12131. Notwithstanding its receipt of federal funds, St. Luke's School of Nursing is not a public entity as defined here. Thus, I will strike all allegations of violations of Title II of the ADA.

[5] On September 27, 2005, the Pennsylvania Human Relations Commission dismissed Shamonsky's administrative complaint because the facts of the case did not establish that probable cause existed to credit the allegations of unlawful discrimination. See Def.'s Ex. D.

[6] Because the analysis for claims under the ADA is the same for claims under the PHRA and the PFEOA, it is not necessary to perform a separate analysis. See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999). Likewise, whether suit is filed under the ADA or the Rehabilitation Act, the substantive standards for determining liability are the same. McDonald v. Pennsylvania Department of Public Welfare, 62 F.3d 92, 95 (3d Cir. 1995).

person who owns, leases (or leases to), or operates a place of public accommodation."[7]
See 42 U.S.C. § 12182(a).  Thus, to establish a violation under Title III of the ADA,
Shamonsky must demonstrate that:  (1) she is an individual with a disability; (2) the
defendant is an entity covered under the ADA; and (3) based on her disability, she was
denied the opportunity to participate in or benefit from defendant's goods, services,
facilities, privileges, advantages, or accommodations.  See 42 U.S.C. § 12182(b)(1)(A)(i).
The Rehabilitation Act imposes nearly identical obligations on all entities that receive
federal funding.  See 29 U.S.C. § 794.  To prove a violation of the Rehabilitation Act, the
plaintiff must demonstrate that (1) she is an individual with a disability; (2) she is
otherwise qualified to receive the benefit in question; (3) she was denied the benefits of
the program solely by reason of her disability; and (4) the program receives federal
financial assistance.  See Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1009 (3d Cir.
1995).

    The ADA defines a "disability" as:  (A) a physical or mental impairment that
substantially limits one or more of the major life activities of such individual; (B) a record
of such an impairment; or (C) being regarded as having such an impairment.  See 42
U.S.C. § 12102(2).  Likewise, the Rehabilitation Act defines an "individual with a

---

[7] Title III defines a public accommodation to include "a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education."  See 42 U.S.C. § 12181 (7)(J).  Although not specifically mentioned in the complaint, I will assume for the purposes of this motion that Saint Luke's School of Nursing owns, leases, or operates a public place of accommodation.

6

disability" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment."  See 29 U.S.C. §§ 705 (9)(B) and (20)(B).

Federal Regulations define a "physical or mental impairment" as either: 1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.  29 C.F.R. § 1630.2(h).

For the purposes of this motion only, I will assume that Shamonsky is an individual with a disability, and even that she is otherwise qualified.  I will further assume that Saint Luke's is a covered entity under the applicable statutes.  However, it is clear that Shamonsky's disability was not the reason that she was denied the opportunity to continue her studies in Saint Luke's nursing program.

Shamonsky cannot establish that Saint Luke's was aware of her diagnosed learning disorder prior to dismissal from the program, notwithstanding her assertion of poor admissions test scores or a passing remark by a teacher.  Where a student has failed to show that the school was aware of her disability at the time she was terminated, the

student has failed to state a claim.  Leacock v. Temple University School of Medicine,
1998 U.S. Dist. LEXIS 18871, at *10 (E.D. Pa. 1998) (citing Nathanson v. Medical
College of Pennsylvania, 926 F.2d 1368, 1381 (3d Cir. 1991) (holding that to be liable
defendant "must know or be reasonably expected to know" of plaintiff's disability)).  In
applying to Saint Luke's program, Shamonsky provided official copies of her previous
transcripts.  Her high school transcript shows cumulative grades in the average range.
Before nursing school, Shamonsky attended Lehigh Carbon Community College to obtain
a certificate as a Medical Transcriptionist.  While in that program (which she did not
complete), Shamonsky attained grades mostly in the range of B and C, with an occasional
A and D.  During her first year at Saint Luke's, Shamonsky received a B+, a B, two C+'s,
and three grades of Satisfactory in her clinical courses.  She first failed a course during
the fall of her second year, but also attained one B and two grades of Satisfactory in the
clinical portions.  In the next semester, Shamonsky earned one B, two B–'s, a C+, and two
grades of Satisfactory in the clinical portions.  During the summer semester of 2004,
Shamonsky received a C in one of her courses, her second failure at Saint Luke's.[8]
Shamonsky's academic performance before and during her time at Saint Luke's was not
so deplorable as to put Saint Luke's on notice of a disability.  Thus, because neither Saint
Luke's nor Shamonsky herself were aware of a learning disability when Shamonsky was
terminated, Saint Luke's cannot be held liable for disability discrimination.

---

[8] See supra note 3.

8

Further, Saint Luke's cannot be held liable for failure to provide Shamonsky with reasonable accommodations.  For a school to be able to make reasonable accommodations for a student, it must have knowledge that such accommodations are required.  Leacock v. Temple University School of Medicine, 1998 U.S. Dist. LEXIS 18871 at *10 (citing Goodwin v. Keuka College, 929 F.Supp. 90, 94 (W.D.N.Y. 1995)).  Saint Luke's has a written policy that a student seeking accommodation for a learning disability must submit "evidence of a current, substantial limitation to learning or other major life activity . . . prior to registering for a course at the School."  See Def.'s Ex. F at 35.  This was not possible here because such evidence was acquired only after Shamonsky's automatic dismissal from the program for failing two nursing courses.  At the time of Shamonsky's dismissal, Saint Luke's had no knowledge of a learning disability, and thus could not have provided her with reasonable accommodations.

Shamonsky also claims that: (1) the "defendants' agent promised Shamonsky that she could finish the nursing program if she went for testing;" (2) Shamonsky detrimentally relied on that promise; (3) after Shamonsky underwent the testing and paid for it with her own money, the defendants reneged on that promise and refused her re-admittance; and (4) the defendants are liable to Shamonsky under a theory of promissory estoppel.

In Pennsylvania, the doctrine of promissory estoppel involves three elements: (1) the promisor made a promise that he should have reasonably expected to induce action or

forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.  Jodek Charitable Trust, R.A. v. Vertical Net Inc., 412 F. Supp. 2d 469, 478 (E.D. Pa. 2006).  However, a broad and vague implied promise is not enough to satisfy the first element.  Ankerstjerne v. Schlumberger Ltd., 2004 U.S. Dist. LEXIS 9927, *14 (E.D. Pa. 2004) (citing C & K Petroleum Prods., Inc. v. Equibank, 839 F.2d 188, 192 (3d Cir. 1988)).  The requisite promise has to be as definite as those required for enforceable contracts, and must be certain and explicit enough so that the full intention of the parties may be ascertained to a reasonable certainty.  See id.; see also Jersey Construction, Inc. v. Pennoni Associates, Inc., 1993 U.S. Dist. LEXIS 2018, *9-10 (E.D. Pa. Feb. 4, 1993) (a cause of action on the theory of promissory estoppel cannot be maintained based upon unsupported, conclusory allegations of reliance upon a "broad and vague implied promise").  Furthermore, a court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005); see also Morse v. Lower Merion School Dist., 132 F.3d 902, 906 n. 8 (3d Cir. 1997) (when deciding a Fed.R.Civ.P. 12(b)(6) motion to dismiss, a court does not have to accept or give credit to "bald assertions," "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual conclusions.")

Shamonsky's complaint alleges that "Defendants' agent promised Shamonsky that she could finish the nursing program if she went for testing."  Given Saint Luke's written policy of dismissing students upon failing a second course, it is inconceivable that anyone in authority at Saint Luke's would have promised Shamonsky that the school would ignore its policy if she were to go "for testing."  First, the alleged promise was not that Shamonsky could finish the program should it be determined upon neuropsychological testing that the reason for her failing both courses could be attributed to a learning disorder.  As stated, the alleged promise would include re-admittance even if Shamonsky "went for testing" which yielded normal results.  Second, in her Response to this motion, Shamonsky insists that not identifying the defendants' agent is not fatal to her case at this stage because the Rules of Civil Procedure provide for a simplified pleading standard, and all material elements of her claim have been included.  While I agree that the Rules provide such a standard, I notice that not identifying the "promisor" here is telling for another reason.  If the alleged promise was certain and explicit enough as required here, it would seem reasonable that at a minimum the name of the promisor would have been included in the complaint.  Certainly, discovery should not be necessary to identify the promisor if the alleged promise were as definite as those required for enforceable contracts, and certain enough to induce action or forbearance.  Thus, I find that the unidentified promisor, being familiar with Saint Luke's written policy, could not have reasonably expected Shamonsky to go for testing or to withhold applying to other nursing

11

programs.  I further find that the alleged promise is also too broad and vague to satisfy the elements of promissory estoppel.

Finally, even though Saint Luke's had no obligation to consider Shamonsky's request for re-admission based on a subsequent diagnosis, it considered the request and made a purely academic decision that Shamonsky could not successfully complete the nursing program at Saint Luke's.  See Leacock v. Temple University School of Medicine, 1998 U.S. Dist. LEXIS 18871 at *10 (citing Goodwin, 929 F.Supp. at 93 (holding that a school can only be held responsible for information it had at the time the decision was made)).  The United States Supreme Court has observed that when judges are asked to "review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment.  Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."  Regents of the University of Michigan v. Ewing, 474 U.S. 214, 225 (1985).  The Court further noted that judges have a special responsibility to safeguard the academic freedom of state and local educational institutions.  University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation.  Board of Curators of the University of Missouri v. Horowitz, 435 U.S. 78, 96 n.6 (1978) (POWELL, J., concurring).  Given the school's need for discretion in making academic

judgments and the judiciary's responsibility to safeguard the academic freedom of institutions such as Saint Luke's (see Regents, 474 U.S. at 225), I find that Saint Luke's decision to uphold its dismissal policy and not permit the re-admission of a student who failed two courses, neither is a departure from accepted academic norms nor demonstrates a lack of professional judgment.[9]  I will not override that decision.  The motion to dismiss will be granted.

An appropriate Order follows.

---

[9]  Because I have determined that Saint Luke's cannot be held liable for disability discrimination or failure to provide reasonable accommodations, Shamonsky's claims against the unnamed John and Jane Does for aiding and abetting the alleged unlawful conduct are also dismissed.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ELIZABETH SHAMONSKY, | : | CIVIL ACTION |
| **Plaintiff** | : | |
| | : | |
| v. | : | NO. 07-1606 |
| | : | |
| SAINT LUKE'S SCHOOL OF | : | |
| NURSING, et al., | : | |
| **Defendants** | : | |

**O R D E R**

**AND NOW,** this   17th       day of March, 2008, upon consideration of the

defendants' motion to dismiss (Document #4), the plaintiff's response (Document #21),

the defendants' reply to that response (Document #12), and after a hearing on the motion,

IT IS HEREBY ORDERED that the motion is GRANTED in its entirety.

The Clerk of Court is directed to mark this case closed for all purposes.


BY THE COURT:


 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.